**BRAKE & ELECTRIC SALES CORPORATION**

v.

**UNITED STATES of America.**

Civ. A. No. 59-522.

United States District Court
D. Massachusetts.

July 18, 1960.

Irvin M. Davis, Boston, Mass., for plaintiff.

Elliot L. Richardson, U. S. Atty., Andrew A. Caffrey, Asst. U. S. Atty., Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

For a number of years prior to 1950 Murray A. Brown was engaged as an individual proprietor in the distribution and wholesale selling of brakes, wheels, axles, bearings, electrical systems and other parts for heavy automotive equipment and in the servicing of such parts. In December of 1949 Brake & Electric Sales Corporation, plaintiff here, was formed to take over this business. Brown advanced $20,000 in cash to the new corporation in payment for 200 shares of its common stock, representing

all the shares issued. At all times since the formation of the corporation Brown has been the sole stockholder of the corporation, its president and treasurer and a director. His wife has been clerk and a director, and the third director has been one Rockwell, an accountant who works one day a week for the corporation.

On January 3, 1950, the corporation took over the business of the original proprietorship. It took over all the tangible and intangible assets of the proprietorship except for some of the cash and the real estate, which it has continued to occupy under a lease from Brown who has retained ownership. Formal transfer of these assets from Brown to the corporation was made on March 1, 1950, after closing of the proprietorship books and completion of an inventory. Brown transferred to the corporation assets having a book value of $116,955.20 and the corporation assumed liabilities of $26,955.20, leaving a net worth of $90,000 for the assets transferred. Brown also transferred to the corporation the good will and franchises of the proprietorship, which were not carried as assets on the books. Brown testified that the fair value of these franchises was $157,000 and that the going-concern value of the whole business with its assets as turned over to the corporation was $300,000. During 1949 the business had sales totaling $250,908.37 and profits before taxes of $53,000. Since 1950 the business of the plaintiff corporation has been increasingly successful, with sales generally increasing from year to year. Sales in 1959 amounted to $862,490.89. It has met all its obligations without borrowing and has discounted all its bills.

On March 1, 1950, the corporation, in return for the property formally transferred to it on that date, issued a negotiable promissory note payable to Brown in the amount of $90,000, due March 1, 1955, and bearing interest at 4 per cent per annum. In December, 1952, this note was canceled and replaced by three notes identical in all respects with the original note except for the amount, two of them being for $6,000 and the third for $78,000. One of the $6,000 notes was endorsed to each of Brown's two minor children, purportedly as a gift, and delivered to Davis, Brown's attorney, who by letter to each of the children acknowledged that he had received the note and was holding it for the child as attorney.[1] On March 1, 1955, when these notes came due, they were extended for five years by agreement between the corporation and the holders, Brown individually and Davis as custodian of the children's notes. On March 1, 1960, they were similarly extended for one year.

Interest on these notes has been regularly paid when due by the corporation in the amount of $3,600 annually. The corporation has annually deducted this amount on its income tax return as interest paid on an indebtedness. For the tax years involved here, the Commissioner of Internal Revenue disallowed the deduction, deficiency assessments were made and paid by the corporation, claims for refund were made and disallowed and plaintiff now brings this action to recover a claimed overpayment. The issue is whether the property turned over to the corporation in the transaction described above represented a loan to the corporation giving rise to interest payments deductible under Section 23(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23(b) and Section 163(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 163(a), or whether it represented a capital investment in the corporation, so that the annual payments by the corporation are in the nature of dividends and hence not deductible by the corporation.

It is plaintiff's contention that the transaction should be regarded as a genuine loan, as on its face it purports to be,

1. In subsequent years Brown has regularly made an annual gift of $6,000 to each of the children in the form of cash deposited to their names in bank accounts.

and that Brown deliberately limited his investment in risk capital in the enterprise to the $20,000 in cash he paid for his stock and advanced the rest of his property as a loan for his own protection, since in the event of a failure of the enterprise he would, as to this $90,000, be a creditor entitled to share in the assets on an equal footing with other creditors, rather than a stockholder who would receive nothing until all claims of creditors were satisfied. Government contends, on the other hand, that Brown really made a capital investment of the property in the corporation, giving it the form of a loan so that he could receive a distribution of the profits in the form of interest which would be deductible by the corporation on its income tax return, while in reality these payments to him constituted dividends.

The court decisions on the problem of whether a given transaction constitutes a loan to a corporation or a capital investment are agreed that the difference between a creditor and a stockholder is that the latter intends to make an investment subject to the risks of the business, while the former seeks a definite obligation payable in any event. The real nature of the transaction and not the form in which it is cast is determinative. Various criteria have been used by the courts to assist in the determination of what really took place, but no single factor is decisive in all cases. Since the facts vary widely from case to case, now one factor or combination of factors and now another, has been regarded as the important one. Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182.

In the present case the transaction took the outward form of a loan and the taxpayer and the other parties concerned appear to have carefully observed all the formalities of treating it as a loan transaction. But it is the substance and not the form which is important, particularly as here where it would be to the tax advantage of the parties to describe a transaction as something other than it really is. Crown Iron Works Company v. Commissioner of Internal Revenue, 8 Cir., 245 F.2d 357, 359.

In many cases an important factor has been the ratio of the claimed indebtedness to the stated capital investment or to the total value of the business. In the present case the $90,000 advance to the taxpayer stands in a ratio of 4½ to 1 to the $20,000 paid in by Brown for the capital stock of the corporation. In the light of the cases dealing with this aspect of the problem, which plaintiff has cited extensively, there does not appear to be such a grossly disproportionate ratio of debt to capital as would require or, taken alone, justify a finding that the transaction here must have been a capital investment rather than a loan. Moreover, the business had a going concern value, including good will and franchises not included in either the $20,000 or the $90,000 amounts, which, if not as great as Brown's valuation, was nevertheless substantial and which may properly be taken into consideration to show a ratio of debt to actual value even more favorable to plaintiff.

There are, however, several other factors which must be taken into consideration. The $90,000 transaction represented the transfer to the corporation of substantially all of the assets shown on the books of the individual proprietorship, except for cash and the real estate. They were assets essential to the conduct of the business and, as Brown testified, it could not have been carried on without them. A transfer of this character seems rather to be a permanent investment in the risk of the business rather than the temporary loan which the parties represented it to be.

A further important factor is that this whole situation was at all times firmly under Brown's control. He ran the corporation and was its sole stockholder. He held the $78,000 note and the two smaller notes were held by his lawyer for the benefit of his children. From the

first, then, the decision as to payment of the notes rested with him. Theoretically they could have been negotiated to a third party who could have enforced them, but as a practical matter there seems to have been no real possibility of this. In fact the notes have been regularly extended when they fell due. Brown's own testimony was that he would never have demanded payment if that would require the corporation to raise the cash for the payment by borrowing from another source. While he testified that he expected payment of the original note at the time of the original transaction, he cannot have realistically expected that in five years the corporation would be able to pay $90,000 in cash at least without putting itself into a disadvantageous financial position which he as sole stockholder would certainly want to avoid. The situation here seems closely comparable to that in Gooding Amusement Company v. Commissioner of Internal Revenue, 6 Cir., 236 F.2d 159, and Ryan Contracting Co. v. Commissioner, P–H.T.C. Memorandum Decisions, Par. 56, 188, in both of which the claimed interest deduction was disallowed.

In addition it is significant that at no time since the corporation was formed has it paid a dividend, nor have the directors even discussed the possibility of declaring a dividend, even though its business has been expanding profitably during this entire period and in each year had a substantial earned surplus. The situation thus appears to be one in which Brown through his complete control is able to use the device of drawing off regular profits from the corporation under a label designed to give the corporation an income tax deduction.

In the light of all the factors of this case, the conclusion must be that the notes involved herein represent an equity investment in the corporation, subject to the risks of the corporate venture, of property essential to its operations, that the notes were never intended to be enforced according to their terms, and that the interest payments made were not true interest payments deductible under the Internal Revenue Code but rather payments in the nature of dividends.

Judgment will be entered for the United States.