**ALBRECHT DAIRY COMPANY, a Corporation, Plaintiff,**

v.

**DEAN FOODS COMPANY, Inc., a Corporation, Defendant.**

No. S65 C 28.

United States District Court
E. D. Missouri,
Southeastern Division.

May 24, 1967.

Hux & Green, Sikeston, Mo., Riddle, O'Herin & Newberry, Malden, Mo., for plaintiff.

Stephen E. Strom, Cape Girardeau, Mo., McConnell, Freeman, Curtis & McConnell, Chicago, Ill., for defendant.

## MEMORANDUM

MEREDITH, District Judge.

This is an action brought by the plaintiff Albrecht Dairy Company, a Missouri corporation and citizen of Missouri (hereinafter referred to as Albrecht), alleging violations of the Missouri Unfair Milk Sales Practices Act (hereinafter referred to as the "Act"). The defendant Dean Foods Company is a

11. See note 5, supra.

Michigan corporation and a citizen of Michigan (hereinafter referred to as "Dean"). The amount in controversy exceeds $10,000. The cause was originally filed in the Cape Girardeau, Missouri, Court of Common Pleas and removed to this Court, which has jurisdiction under 28 U.S.C. §§ 1332 and 1446.

The defendant Dean and its parent corporation do business in eleven states of the United States. Defendant Dean and its parent corporation with its subsidiaries had combined sales of $72,000,-000 for the year 1964. The plaintiff Albrecht operates wholly within the State of Missouri and does business in the southern part of Perry, the northern part of Scott and all of Cape Girardeau counties. The plaintiff's gross sales from 7–1–64 to 6–30–65 amounted to approximately $175,000.

Sunny Hill Dairy Farms, Inc. (hereinafter referred to as "Sunny Hill"), is located in the City of Cape Girardeau, Missouri, and approximately seventy-five percent of its sales are in the Cape Girardeau area market. Sunny Hill began to deliver milk to the Memphis, Tennessee, market in March 1964, at a price lower than Dean's prevailing price there, which called its existence to the attention of defendant.

Defendant Dean applied for a permit to deliver milk in Cape Girardeau, Missouri, with a distributor from its Chemung and Huntley, Illinois, plants, on April 20, 1964.

In May 1964, defendant Dean instituted suit against Sunny Hill in the United States District Court in Memphis, Tennessee.

Defendant Dean contacted Valley Farms Dairy, Inc., of St. Louis, Missouri (hereinafter referred to as "Valley Farms"), to package milk for them for sale in Cape Girardeau, Missouri, in July 1964. In August or September 1964, Dean applied for authority to do business within the State of Missouri. Defendant Dean entered into an agreement with Valley Farms to bottle and deliver half-gallon units of homogenized milk to the Cape Girardeau market in September 1964. Valley farms applied for a permit to deliver defendant Dean's milk to the City of Cape Girardeau on September 30, 1964. This permit was granted on October 6, 1964.

Mr. Buddy Hunt of Midwest Dairy Company, Memphis, Tennessee, in a telephone conversation with Mr. Louis C. Blattner, Jr., of Sunny Hill, advised Blattner that defendant Dean would not come into the Cape Girardeau, Missouri, market if Sunny Hill would raise its price of milk in Memphis, Tennessee. Midwest Dairy Company is not a part of defendant Dean's organization and no connection was shown between Hunt and the defendant or that defendant ever authorized or ratified this conversation.

Defendant Dean employed a twenty-year old farm boy on the evening of October 6, 1964, to drive a delivery truck rented from Hertz Rental Company to deliver its products in the City of Cape Girardeau. The driver was paid a salary of $75 per week, the truck rental was $52 per week, plus nine and one-half cents per mile. Defendant Dean entered the market in the City of Cape Girardeau, Missouri, on October 7, 1964, at a price of thirty-four and one-half cents for one-half gallon of homogenized milk at wholesale. The prevailing price for a half-gallon of fluid milk at wholesale in Cape Girardeau for several years prior to Dean's entry in the market was forty-one cents; the retail price was forty-seven cents per half gallon. Defendant Dean, at or near to the time of its entry in the Cape Girardeau market, entered the markets at Holly Springs, Corinth, New Albany, and other Mississippi towns through a distributor, but entered at prevailing market prices. Defendant Dean's usual custom in entering a market was through a distributor at prevailing market prices, and not in the manner in which it hurriedly entered the Cape Girardeau market.

Defendant Dean, during the period from the middle 1950's through 1962, had distributed milk in the southeast Missouri area near Kennett, Caruthers-

ville, and the area of southeast Missouri near the Arkansas line, but had withdrawn from this market. Defendant Dean would not allow its sales supervisors or drivers to sell in the territory between Blytheville, Arkansas, and Cape Girardeau, Missouri, when it entered the Cape Girardeau, Missouri, market, on October 7, 1964.

Defendant Dean's supervisor in charge of entering the Cape Girardeau, Missouri, market was not advised of the fact that Dean would enter this market until one week prior to his arrival in Cape Girardeau. He spent four days in Cape Girardeau contacting prospective customers in the City of Cape Girardeau. He also contacted prospective customers in Scott City to whom an advance letter had been sent, but advised these customers that he did not have a permit to sell in Scott City and would be back when he got a permit. He never returned and no attempt was made by Dean to sell in Scott City.

None of the counties in southeast Missouri require a permit to distribute milk. Cape Girardeau, Jackson, and Sikeston are the only cities in Perry, Scott, and Cape Girardeau counties that have milk ordinances requiring permits. No permit is required to deliver milk in Illmo or Scott City, Missouri. The defendant made no effort to see whether permits were necessary in any place other than Cape Girardeau and Jackson, which were the principal cities in which defendant Dean sold milk during the period in question. Defendant Dean during the time in question had twelve customers in all. By the time of trial the number of customers had decreased to seven. Defendant Dean never made a bona fide effort to enter the Cape Girardeau County or the southeast Missouri area for the purpose of expanding its territory and making a profit from its sales. From October 1964 through August 1965, defendant Dean lost $6,277.39 on its Cape Girardeau venture, which is an inconsequential amount to Dean and its affiliated companies, but it did serve the purpose of punishing Sunny Hill for its entry into the Memphis milk market at a price lower than Dean's. In the fight between Dean and Sunny Hill, the plaintiff, an innocent bystander, also got hurt.

Dean had some trouble getting a permit to sell milk in the City of Cape Girardeau, but, had it really desired to make a bona fide entry into the Cape Girardeau market, nothing would have prevented it from expanding its line of products through Valley Farms in St. Louis, which it made no effort to do pending the obtaining of a permit for itself.

Defendant Dean's vice president in charge of sales at Memphis, Tennessee, flew to St. Louis on the day prior to defendant's entry into the Cape Girardeau market and solicited orders from the chain stores located in Cape Girardeau—Kroger, A & P, and National. Dean obtained the business of Kroger at Cape Girardeau.

No dairy other than defendant Dean entered the Cape Girardeau market from October 1964 through November 1965. The price of milk in the southeast Missouri area outside the Cape Girardeau County area was not affected by the competition of Dean. In the cities of Chaffee, Perryville, Marble Hill, and Sikeston from October 1963 through November 1965 the price of milk remained at forty-one cents per half-gallon unit wholesale and forty-seven cents retail.

The plaintiff along with many other dairies in the southeast Missouri area, prior to Dean's entry in the Cape Girardeau market, and continuing after Dean entered the Cape Girardeau market, gave a two percent discount for payment in cash within a specified number of days after purchase. This two percent discount for cash is specifically authorized by the Act, V.A.M.S. 416.440(6), which provides:

> "This section does not prevent a discount of two per cent or less for payment on or before a certain date."

Dean's entry into Cape Girardeau, through Kroger, at thirty-four and one-

half cents wholesale affected the price of one-half gallon and other units of milk at wholesale, retail and home delivery in the cities of Cape Girardeau, Jackson, Illmo, Scott City and Cape Girardeau County, because the price of milk at a large retail outlet, such as Kroger, in a small market like Cape Girardeau, in effect, sets the price of milk. The plaintiff and the other dairies in the area, in order to stay in business after Dean's entry, met the price of Dean. Plaintiff also continued to give the two percent discount. The Missouri Unfair Milk Sales Practices Act, contained in V.A. M.S. 416.410 through 416.560 provides in § 416.415:

"1. No processor or distributor shall, with the intent or with the effect of unfairly diverting trade from a competitor, or of otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, advertise, offer to sell or sell within the state of Missouri, at wholesale or retail, any milk product for less than cost to the processor or distributor.

"2. Proof of the advertising, offer to sell or sale of milk products by a processor or distributor for less than cost to the processor or distributor is prima facie evidence of a violation of this section.

"3. A profit from the sale of products other than milk products is not used in cost computation to subsidize or lower the cost of doing business with respect to milk products."

The Act, § 416.410(7), defines a distributor as follows:

" 'Distributor', any person, other than a bulk milk handler, engaged in the business of transferring title within the state to milk products for a consideration, where the product is to be sold for resale or further processing;"

Section 416.410(5) defines cost to distributor as follows:

" * * * the price paid for raw materials, plus the cost of doing business, which shall include labor, salaries

paid executives and officers, rent, interest, depreciation, power, supplies, maintenance of equipment, selling costs, advertising, transportation and delivery costs, credit losses, all types of permits and license fees, all taxes, insurance, and all overhead expenses of the processor or distributor; "

Section 416.445 provides that the following sales are exempt from the provisions of the law:

"(1) The sales are made in an isolated transaction and not in the usual course of business;

"(2) The merchandise is damaged;

"(3) The items are sold upon the final liquidation of any business;

"(4) The items are sold for charitable purposes or to unemployment relief agencies;

"(5) The items are sold by an officer acting under the direction of any court;

"(6) The price of the item is made in good faith to meet the equally lower price of competition, provided however, the person charged with a violation of this section further affirmatively proves the reduction in price is not made with the intent or with the effect of unfairly diverting trade from a competitor, or of otherwise injuring a competitor, or of destroying competition, or of creating a monopoly, and unless such is affirmatively shown, the court shall enter its order enjoining the violation as charged."

The Act, § 416.455, provides that a person injured may recover three times the actual damages sustained as a result of the violation or may sue to enjoin the violation.

Dean's actions constitute a violation of the Act. Its entry into the Cape Girardeau market was with the intent or with the effect of unfairly diverting trade from a competitor or of otherwise injuring a competitor. Dean is a distributor as defined in the Act. Its sales were below cost. The sales below cost were not sold under the provisions which

exempt them from the Act. Plaintiff's damage, as a result of Dean's entry into the market, from the period October 1, 1964, to November 26, 1965, was $15,402.65. Plaintiff's damages are calculated by multiplying the number of units sold by its loss on each unit sold. The loss is the difference in its selling price prior to Dean's entry into the market and after Dean's entry into the market. This theory of computing damages has been upheld in Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); Bergjans Farm Dairy Co. v. Sanitary Milk Producers, 241 F.Supp. 476 (E.D. Mo.1965), affirmed 368 F.2d 679 (8th Cir. 1966). This Act has been construed on a few occasions by the Missouri Supreme Court, State ex rel. Thomason v. Adams Dairy Co., 379 S.W.2d 553 (Mo. S.Ct.1964); Borden Co. v. Thomason, 353 S.W.2d 735 (Mo.S.Ct.1962); State ex rel. Thomason v. Roth, 372 S.W.2d 94 (Mo.S.Ct.1963); Foremost Dairies, Inc. v. Thomason, 384 S.W.2d 651 (Mo.S.Ct. 1964). The instant case is one primarily of first impression.

 The defendant contends that since its prices in Cape Girardeau followed the prices of its Memphis, Tennessee, milk products, it did not violate the Act. But this Court can find no reason, and the evidence does not show, why the prices of Memphis and Cape Girardeau should be the same or similar because these are entirely different markets and different cost factors prevail. Defendant also contends that the Missouri Supreme Court, if faced with this situation, would follow Tennessee, which construed an Act which set the price of milk. There, a retailer reduced his milk price below the statutory minimum by giving trading stamps. This was held to be a violation of the Act, and accordingly, plaintiff could not recover damages from another who had violated the Act, Hogue v. Kroger Co., 210 Tenn. 1, 356 S.W.2d 267 (1962), reh. 213 Tenn. 365, 373 S.W.2d 714 (1963). But that case is readily distinguishable from the instant facts since plaintiff here did not violate the Missouri Act. The Missouri Act specifically authorizes a two percent cash discount. Dean further contends that it had a perfect right to enter the Cape Girardeau market whatever its motives may have been. With this the Court does not agree when its actions violate the Missouri law.

The plaintiff has also asked for injunctive relief, but the Court is of the opinion that it has an adequate remedy by damages and injunctive relief will be denied.

Plaintiff is entitled to a judgment for its damages in the sum of $15,402.65 trebled, or a total of $46,207.95, and costs.