Jack L. COLLIER, d/b/a Collier's Dairy Products Co., Appellant,

v.

Wilfred E. ROTH, d/b/a Wimpy's I. G. A. Foodliner, Respondent.

No. 53609.

Supreme Court of Missouri, Division No. 1.

Nov. 12, 1968.

Motion to Modify Opinion and Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 9, 1968.

O'Herin & Newberry, Malden, for plaintiff-appellant.

Dearing, Richeson, Weier, Roberts & Wegmann, J. Richard Roberts, Hillsboro, for respondent.

HIGGINS, Commissioner.

Action under the Unfair Milk Sales Practices Act, Sections 416.410 to 416.560,

V.A.M.S., for treble damages in excess of $15,000. Judgment was for defendant.

Plaintiff's petition, filed May 20, 1963, identified defendant as a nonprocessing retailer of milk products as defined in Section 416.410(10), V.A.M.S., and charged that from October 10, 1961, to May 20, 1963, he advertised and made sales of milk for less than cost in violation of Section 416.425, V.A.M.S., with intent and effect of unfairly diverting trade from plaintiff and destroying and injuring plaintiff's business and property. Plaintiff claimed actual damages as a result of the alleged unlawful acts of defendant and prayed for "three times the actual damages" under Section 416.455, V.A.M.S.

Jack L. Collier, a milk distributor at Perryville, Missouri, obtained his milk supply by purchases from Chester Dairy Company, Chester, Illinois, and sold it through subdistributors Bernie Palmer in Ste. Genevieve, Missouri, and Roy Wilson and Glen Dobbelare in Perryville, Missouri. The subdistributors in turn sold the milk at wholesale to retail stores and at retail on home delivery routes. Mr. Collier guaranteed his subdistributors a markup of 4½¢ per half gallon on sales at wholesale and 9¢ per half gallon on home delivery sales. If and when the subdistributors had to meet a lower price of a competitor, Mr. Collier reduced his price to the subdistributors to maintain their guaranteed markup.

Wilfred E. Roth owned a grocery store in Ste. Genevieve, Missouri, Wimpy's I.G.A. Foodliner, and he sold milk at retail in a volume sufficient to affect prices in Ste. Genevieve and Perry counties. Each week between October 10, 1961, and May 20, 1963, in the Ste. Genevieve Herald, he advertised a price on milk which was less than his invoice price plus his cost of doing business, and made sales of milk pursuant to the advertisements, all in violation of Section 416.425, supra. A permanent injunction on account of such sales was issued against defendant by the Circuit Court of Ste. Genevieve County, The Honorable J. O. Swink, Judge, July 3, 1962, for violations of the Act during the period February 3, 1962, to March 26, 1962; however defendant continued to advertise and sell milk at a price below his invoice price plus cost of doing business. In November, 1961, Mr. Collier asked Mr. Roth if he would consider getting his sale price in line with other brands. His answer: "I'm going to put you out of business."

In order to meet defendant's reduced prices, plaintiff reduced the price of milk to his subdistributors. This was accomplished by issuing credits on unit prices in amounts sufficient to maintain the guaranteed markup and were calculated monthly:

"Credits Issued by Jack Collier
From October 10, 1961,
through May, 1963

| | |
|---|---:|
| October 10, 1961 .......... $ | 361.03 |
| November 1961 ............ | 2,173.86 |
| December 1961 ........... | 682.02 |
| January 1962 ............. | 194.18 |
| February 1962 ............ | 140.03 |
| March 1962 .............. | 1,409.09 |
| April 1962 ............... | 520.39 |
| May 1962 ................ | 0.00 |
| June 1962 ............... | 0.00 |
| July 1962 ............... | 0.00 |
| August 1962 ............. | 359.02 |
| September 1962 ........... | 888.64 |
| October 1962 ............ | 579.41 |
| November 1962 ........... | 621.68 |
| December 1962 ........... | 640.64 |
| January 1963 ............ | 957.53 |
| February 1963 ........... | 867.13 |
| March 1963 ............. | 826.86 |
| April 1963 .............. | 632.05 |
| May 1963 ............... | 629.90 |
| | $12,483.46" |

Plaintiff submitted these credits as his actual damages which, when trebled, amount to $37,450.38.

During this period plaintiff had an arrangement with his supplier, Chester Dairy,

by which he would be paid 5¢ for each 4½¢ of guarantee paid on account of reduced prices on retail sales. At trial time plaintiff had received $8,894.83 from Chester to offset losses paid to his sub-distributors. Additional sums were due plaintiff which were withheld pending results of this litigation and which plaintiff hopes to obtain or settle upon conclusion of this litigation.

Upon trial without a jury, the trial court sustained defendant's motion for directed verdict and entered judgment for defendant for the reason that "plaintiff's evidence and proof does not indicate that even if defendant Roth had made improper sales that plaintiff was damaged by said sales." The court amplified this position by observing: "Now, so far it's * * * undisputed that there was—that's my language —a price war on milk; that there was this advertising. * * * But, for the plaintiff's case right now there has to be shown actual damages. And, if he has been paid in part or in full by Chester, then his only damages are what he has not been paid and is not going to be paid. * * * And unless you show that they (Chester Dairy) positively refused to abide by what * * * (plaintiff) says the agreement is I don't see where he's been damaged."

Appellant contends he made a case of damages under the Act in that he proved he "had to lower his price of milk to meet the lower unlawful price of defendant-respondent and that the sum of $12,483.46 represents the additional amount * * * (he) would have received from the sale of his milk but for the unlawful acts of defendant-respondent." Appellant supports this position with the further contention (in answer to the court's observations) that "payments received and to be received by * * * (him) from the Chester Dairy Company to offset his loss of $12,483.46 are payments from a collateral source and are not available to defendant-respondent to show that plaintiff appellant suffered no damages."

Respondent offers two contentions in support of the judgment: that plaintiff is not the real party in interest and thus has no right to maintain this action; and that plaintiff "did not establish * * * he was damaged, nor did * * * (he) demonstrate any causal connection between his alleged injury and defendant's alleged violation of the milk sales law."

Authority for recovery of private treble damages under the Unfair Milk Sales Practices Act is provided by Section 416.-455, V.A.M.S.: "Any person who is injured in business or property by reason of another person's violation of any provision of sections 416.410 to 416.560 may intervene in the suit for injunction instituted pursuant to section 416.450, against the other person or he may bring a separate action and recover three times the actual damages sustained as a result of the violation, together with the costs of the suit, or may sue to enjoin the violation of any provision of sections 416.410 to 416.560."

■ This section has not been previously construed by a Missouri appellate court; however, it has been construed and was the authority for a damage award in Albrecht Dairy Co. v. Dean Foods Co., E.D.Mo., 269 F.Supp. 329, first filed in, but removed from, the Cape Girardeau, Missouri, Court of Common Pleas. In absence of Missouri authority, it is proper to consult such federal decisions, Lynch v. Webb City School Dist. No. 92, Mo.App., 418 S.W.2d 608, 617 [15]; State ex rel. United States Fire Ins. Co. v. Terte, 351 Mo. 1089, 176 S.W.2d 25, 28 [1], and the Act should be liberally construed in order that its beneficial purposes be served. Borden Co. v. Thomason, Mo., 353 S.W.2d 735, 753 [14].

The judgment for plaintiff Albrecht was affirmed, Dean Foods Co. v. Albrecht Dairy Co., 8 Cir., 396 F.2d 652, the court holding that Section 416.455, V.A.M.S., is identical in substance to Section 4 of the Clayton Act, 15 U.S.C. § 15, and, according-

ly, approved the use of cases under the Clayton and Sherman Acts for construction of Missouri's Act. Such cases recognize a distinction between the burden of proof required to establish the fact of damage and that necessary to show the amount of damage. 396 F.2d 1. c. 658.

As found by the trial court, and as contended by defendant Roth, defendant Dean contended that notwithstanding its violation of the Missouri Act, plaintiff was not caused to sustain any damage by reason of its violation and, therefore, had no cause of action for damages. Of this contention, the 8th Circuit said: "Defendant presents a two-prong approach to the claim of no damage. First, we are told that since plaintiff did not lose any retail customers or sustain a loss in gross profits after Dean entered the Cape market, it failed to carry the burden of establishing the fact of damage. We do not agree. Mr. Albrecht indicated that even though plaintiff had not shown a net profit it nonetheless had experienced a continual growth in sales both prior to and after Dean's entry. There is nothing to indicate that Albrecht's volume would not have increased if the prices prevailing before October 7th had remained in effect. Albrecht maintained an accurate record of each sale consummated during the period subsequent to October 7th. The undisputed evidence proves that on all sales Albrecht received less per unit than it would otherwise have derived if Dean's action had not depressed milk prices in the affected area." 396 F.2d 1. c. 659 [3]. Plaintiff Albrecht calculated his damages by multiplying the number of units sold by its loss on each unit sold, the loss being the difference in selling price prior to Dean's entry and after Dean's entry into the market, a theory upheld in Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544, and Bergjans Farm Dairy Co. v. Sanitary Milk Producers, E.D.Mo., 241 F.Supp. 476, aff. 8 Cir., 368 F.2d 679. Albrecht Dairy Co.

v. Dean Foods Co., supra, 269 F.Supp. 1. c. 333 [1].

Mr. Collier's evidence would support findings that Mr. Roth started a "price war" (the trial court's words) on October 10, 1961, by selling milk below his invoice cost; that on July 3, 1962, he was permanently enjoined from such practice; that he continued selling below his invoice price plus cost of doing business through May 20, 1963, the date of this suit; that to meet the force and effect of defendant's sales, unlawful under Sections 416.410(10) and 416.-425, V.A.M.S., appellant reduced his price to his subdistributors on each unit sold at retail by them, and that this constituted damage. Appellant kept monthly records reflecting the reductions made in order to keep his subdistributors competitive with defendant's reduced prices, and these reductions could be found to constitute a loss to plaintiff of $12,483.46, resulting from defendant's unlawful pricing practices.

■ As observed by respondent, this is not the same theory of damages as presented in Albrecht Dairy Co. v. Dean Foods Co., supra, but "It is settled law that once the fact of damage has been established courts are allowed considerable leeway in arriving at the amount of damages." Dean Foods Co. v. Albrecht Dairy Co., supra, 396 F.2d 1. c. 660 [5]. Bigelow v. R. K. O. Radio Pictures, 327 U.S. 251, 66 S.Ct. 574, 90 L.Ed. 652, reviewed and approved theories of damages in this type action previously presented by Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, and Story Parchment Co. v. Paterson Parchment Paper Co., supra. In the first case, the defendant, in an effort to extend its monopoly, refused to sell to the plaintiff goods which had regularly been a part of his stock in trade; in the second, the defendants, competing sellers, engaged in destructive price competition with the plaintiff. In the first, plaintiff sought to establish his damage by comparing profits before and after defendant's unlawful in-

terference with his business; in the other plaintiff sought to show damage by proof of the difference between amounts actually realized after defendants' acts became effective and what, but for those acts, would have been realized from sales at reasonable prices. "In each case we held that the evidence sustained verdicts for the plaintiffs, and that in the absence of more precise proof, the jury could conclude as a matter of just and reasonable inference from the proof of defendants' wrongful acts and their tendency to injure plaintiffs' business, and from the evidence of the decline in prices, profits and values, not shown to be attributable to other causes, that defendants' wrongful acts had caused damage to the plaintiffs. * * * The tortious acts had in each case precluded ascertainment of the amount of damages more precisely, * * *. Nevertheless, we held that the jury could return a verdict for the plaintiffs, even though damages could not be measured with the exactness which would otherwise have been possible.

"In such a case, even where the defendant by his own wrong has prevented a more precise computation, the jury may not render a verdict based on speculation or guesswork. But the jury may make a just and reasonable estimate of the damage based on relevant data, and render its verdict accordingly. In such circumstances, 'juries are allowed to act upon probable and inferential, as well as direct and positive proof.' * * * Any other rule would permit the wrongdoer to profit by his wrongdoing at the expense of his victim. * * *

"The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." Bigelow v. R. K. O. Radio Pictures, supra, 327 U.S. l. c. 264–265, 66 S.Ct. l. c. 579.

Respondent's contention that appellant is not the real party in interest to bring this suit is bottomed on an argument that appellant is a middleman between his supplier, Chester, and the local dealers, Palmer, Wilson, and Dobbelare; that it was the local dealers who reduced their prices and thus were the injured parties. To circumvent the effect of the markup guaranteed his subdistributors by appellant, respondent argues that appellant was not injured by defendant's actions but, rather, by fulfilling his agreement with the local distributors. He says that under such circumstances appellant might become subrogated to rights of the local distributors, Cole v. Morris, Mo., 409 S.W.2d 668, but, even if so, he has not the assignment necessary to place himself in that position.

■ Respondent's subrogation argument is beside the point. It has already been demonstrated that plaintiff adduced evidence from which the trier of fact could find that plaintiff was injured by defendant and, under Section 416.455, supra, the person so injured is the real party in interest as defined by the real party in interest statute, Section 507.010, V.A.M.S., until his "entire or whole case has been assigned." Hayes v. Jenkins, Mo.App., 337 S.W.2d 259, 261 [3]. See also Steele v. Goosen, Mo., 329 S.W.2d 703, 711 [11]. Similarly, since appellant has not assigned his rights or case to Chester in exchange for reimbursements made or to be made to him by Chester, he remains the real party in interest as compared to that party. The court's observations, however, present yet another question, i. e., whether appellant can sue for damages in this action where it appears he has been or will be reimbursed for sums he may be out on account of payments to his subdistributors in order that they may remain in business in competition with defendant.

■ "Under the collateral source rule or doctrine (recognized and applied in Missouri, Burens v. Wolfe Wear-U-Well Corp., 236 Mo.App. 892, 158 S.W.2d 175, 179) which is a well-established rule in the law of damages, a wrongdoer is not entitled to have the damages to which he is liable

reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged." 25 C.J.S. Damages § 99(1), p. 1011. See also 22 Am.Jur.2d § 206, p. 286. Hanover Shoe, Inc. v. United Shoe Machinery Corp., D.C., 185 F.Supp. 826, aff. 3 Cir., 281 F.2d 481, applied the rule in a private treble damages suit under the Clayton Act, supra: "We turn now to the argument that the defendant is relieved of liability because the plaintiff passed on its loss to its customers. The Court thinks this argument is invalid; * * *. The plaintiff against whom a tort is committed has his cause of action at the moment that the tort occurs. * * * Things which happen later and let an injured plaintiff escape some of the ultimate consequences of the wrong done him do not inure to the benefit of the defendant. * * If friends of a man against whom a tort is committed make up a purse to pay for his medical services, that does not cut down what the plaintiff may recover from the tortfeasor. * * * if a man having sustained an injury works extra hard after his recovery and comes out at the end of the year as financially well off * * *, the wrongdoer cannot claim reduction of damages on this account." 185 F.Supp. l. c. 829(2). Under this authority defendant may not escape the consequences of his violations of the Act by an application of payments received or to be received from Chester Dairy Company.

Judgment reversed and cause remanded.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.