Jack **L. COLLIER** d/b/a Collier's Dairy Products Company, Plaintiff-Respondent,

v.

Wilfred E. **ROTH** d/b/a Wimpy's I. G. A. Foodliner, Defendant-Appellant.

No. 9305.

Missouri Court of Appeals, Springfield District.

Oct. 8, 1974.

Motion for Rehearing or to Transfer Denied Oct. 23, 1974.

Application to Transfer Denied Dec. 16, 1974.

STONE, Judge.

This is the fourth appellate chapter in a marathon judicial serial which began its run in 1962 when the State Commissioner of Agriculture instituted an action against Wilfred E. Roth d/b/a Wimpy's I.G.A. Foodliner, a nonprocessing retailer of milk as defined in the Unfair Milk Sales Practices Act (hereinafter the Act) [§ 416.-410(10)],[1] to enjoin alleged illegal practices of defendant Roth in selling milk below his cost in violation of the Act [§ 416.-415]. State ex rel. Thomason v. Roth, 372 S.W.2d 94 (Mo.1963). The second and third chapters chronicle the course of the instant action for treble damages [§ 416.-455][2] through two previous trials and appeals. Collier v. Roth, 434 S.W.2d 502 (Mo.1968); Collier v. Roth, 468 S.W.2d 57 (Mo.App.1971). After a third trial, defendant Roth now seeks relief from a judgment in the sum of $17,518.86 entered upon a jury verdict in that amount which was "three times [the] actual damages" of $5,839.62 found in the verdict to have been sustained by plaintiff Collier by reason of defendant's violations of the Act in selling milk at retail for less than cost. § 416.425.

Defendant Roth owned a grocery store in Ste. Genevieve, Wimpy's I.G.A. Foodliner, where he sold milk at retail in sufficient volume to affect prices in Ste. Genevieve and Perry counties. Plaintiff Collier, a milk distributor [§ 416.410(7)] at Perryville, Missouri, sold milk through subdistributors Bernie Palmer in Ste. Genevieve, Missouri, and Roy Wilson and Glen Dobbelare in Perryville, Missouri, who in turn sold the milk at wholesale to retail stores and at retail on home delivery routes. During the period for which damages were sought in this action, to wit, October 1961 to August 1962 inclusive, de-

J. Richard Roberts, Dearing, Richeson, Roberts & Wegmann, Hillsboro, for defendant-appellant.

James S. Newberry, Columbia, Edward F. O'Herin, Malden, for plaintiff-respondent.

1. All statutory references are to RSMo 1969, V.A.M.S., and all references to rules are to the Supreme Court Rules of Civil Procedure, V.A.M.R.

2. "Any person who is injured in business or property by reason of another person's violation of any provision of sections 416.410 to

416.560 may intervene in the suit for injunction instituted pursuant to section 416.450, against the other person or he may bring a separate action and recover three times the actual damages sustained as a result of the violation, together with the costs of the suit, or may sue to enjoin the violation of any provision of sections 416.410 to 416.560."

fendant continued to advertise and sell milk at a price below his cost as determined in accordance with the governing statutory formula, i. e., his invoice price plus his cost of doing business. § 416.-410(6). Plaintiff guaranteed his three above-named subdistributors a markup of 4½¢ per half-gallon on sales at wholesale and 9¢ per half-gallon on retail sales on home delivery routes. Accordingly, when those subdistributors were forced to lower their prices to the level of defendant's reduced prices in order to hold their customers, plaintiff in turn was required to credit his subdistributors from time to time in such amounts as were necessary to maintain their guaranteed markup. That those credits during the period in suit aggregated $5,839.62, the amount of "actual damages" found by the jury upon trial, is not here disputed.

Defendant's complaints on this appeal are leveled at instructions 2 and 7 tendered by plaintiff. The first point charges that the trial court erred in giving instruction 7, which reads thusly:

"If you find the issues in favor of the plaintiff, and if you believe the conduct of defendant as submitted in Instruction Number 2 was willful, wanton, or malicious, then you may award plaintiff three times his actual damages to which you find plaintiff entitled under Instruction No. 6 as actual and punitive damages.

"The word 'malicious' as used in this instruction does not mean hatred, spite or ill will, as commonly understood, but means the doing of a wrongful act intentionally without just cause or excuse.

"MAI No. 10.01 Modified

"MAI No. 16.01

"Tendered by Plaintiff"

The three reasons assigned in the three subpoints under the first point are that in-struction 7 "(a) submits an issue not raised by the pleadings; (b) directs the jury as to the amount of punitive damages, if any, it should assess; [and] (c) misstates the applicable law by advising the jury that the only penalty it could assess was three times actual damages."

*Of (a).* The argument of defendant's counsel on this subpoint runs along the line (1) that plaintiff's petition did not "support" the giving of instruction 7 (a modification of MAI 10.01 dealing with "Damages—Exemplary—Willful, Wanton or Malicious Misconduct" followed by the definition of legal malice in MAI 16.01), because this instruction submitted a "claim for *punitive* damages based on *willful, wanton,* or *malicious misconduct*" although (so counsel declare) plaintiff's petition did not "serve to alert defendant that 'punitive' damages [were] being sought because of his alleged 'malicious' behavior," and (2) that, since plaintiff's petition pleaded a cause of action predicated on § 416.455 and that statute does not expressly mention "malice" or "maliciousness," instruction 7 presented to the jury "an issue entirely foreign to the pleadings." (Emphasis by counsel)

■ It always has been the law in this jurisdiction that, as declared in MAI 16.01 (the second paragraph of plaintiff's instruction 7), malice in its legal sense means the doing of a wrongful act intentionally without just cause, for which, as stated in MAI 10.01 (appropriately modified in the first paragraph of plaintiff's instruction 7), the trier of the facts *may* award exemplary or punitive damages. [3]

Instant plaintiff's petition charged, inter alia, that defendant had offered for sale and sold milk in violation of §§ 416.425 and 416.435 of the Act "with the intent and effect of unfairly diverting trade from the plaintiff and with the intent of destroying plaintiff's business," averred that

3. Goetz v. Ambs, 27 Mo. 28, 33–34 (1858); Buckley v. Knapp, 48 Mo. 152, 161–162 (1871); McNamara v. St. Louis Transit Co., 182 Mo. 676, 681, 685, 81 S.W. 880 (1904); Beggs v. Universal C.I.T. Credit Corp., 409 S.W.2d 719, 722(2–4) (Mo.1966), 35 A.L.R. 3d 1007; Tietjens v. General Motors Corp., 418 S.W.2d 75, 88(14) (Mo.1967); Mills v. Murray, 472 S.W.2d 6, 17 (Mo.App.1971).

his business losses resulted from those "unlawful acts" of defendant, and asserted that under § 416.455 "he [was] entitled to recover three times his actual damages sustained as the result of [defendant's] violations" of the Act. And during *each* of the two prior trials [Collier v. Roth, supra, 434 S.W.2d at 503 (*first* trial); transcript on appeal following *second* trial, p. 95], as during the third trial presently under review, there was evidence that defendant Roth told plaintiff Collier "I'm going to put you out of business."

■ On the second appeal in this case, we pointed out per Titus, P. J., that, although the Act is not to be classified as criminal because it provides for no criminal penalties [Borden Co. v. Thomason, 353 S.W.2d 735, 750, 755 (Mo. banc 1962)], "that portion of § 416.455 with which we are concerned is, nonetheless, *penal* in nature" in that it permits the recovery of penal or punitive damages by investing the trier of the facts with discretionary authority to award an aggrieved plaintiff three times the actual damages sustained.[4] Collier v. Roth, supra, 468 S.W.2d at 60(4). Against this recorded backdrop, defendant's present argument he had not been alerted that " 'punitive' damages [were] being sought because of his 'malicious' behavior" and that instruction 7 presented to the jury "an issue entirely foreign to the pleadings" becomes strained and specious, and subpoint (a) must be rejected.

■ *Of (b) and (c).* We treat of these subpoints together because of their intertwined complaints that instruction 7 advised the jurors that, if they found the issues for plaintiff, they might award him "three times his actual damages . . . as actual and punitive damages," rather than informing them that they might award him (as defendant's counsel insist in their brief should have been done) *"up to, but not beyond,* three times actual damages." In their effort to support this position, defendant's counsel primarily and principally rely upon the statement in our case of Simmons v. Jones, 361 S.W.2d 860, 865 (Mo.App.1962), as quoted in the "Committee's Comment" under MAI 10.01, that " 'the giving or withholding of punitive damages, *as well as the amount thereof,* lies wholly within the discretion of the jury' [citing cases]; and therefore an instruction which, either expressly or in effect, directs the assessment of such damages in some amount is erroneous." (Emphasis by counsel) *Simmons* was a jury-tried action for damages on account of personal injuries sustained in a rear-end vehicular collision, and the above-quoted excerpt from the opinion in that case recognized the established principle applicable in situations where, as in *Simmons,* the exercise of discretion by the trier of the facts in determining the *amount* of punitive damages is not limited, regulated or controlled by legislative enactment.

However, instant plaintiff's suit is on a cause of action created and conferred by statute, namely, the Unfair Milk Sales Practices Act [§§ 416.410 to 416.560, incl.], and his recovery of punitive damages in an action such as the one at bar is controlled and governed by § 416.455 which in pertinent part provides that "[a]ny person who is injured in business or property by reason of another person's violation of any provision of sections 416.410 to 416.560 . . . *may* bring a separate action and *recover three times the actual damages sustained as a result of the violation . . . .* " As we view it, this is a clear, plain and unambiguous statutory grant of permissive authority for the trier of the facts to award "three times the actual damages sustained," conferred in language which neither states nor fairly implies that such award may be in any amount "up to, but not beyond" three times the actual damages. This opinion concerning the statutory grant under consideration has been strengthened and confirmed by an extensive review of our Missouri statutes which clearly and convincingly reflect the fact

---

4. Except as otherwise specifically noted, all emphasis herein is ours.

that, when the General Assembly has intended to grant permissive authority for the trier of the facts to impose a monetary penalty or to make a monetary award in any amount "up to, but not beyond" a stated maximum, such intention has been evidenced by inclusion in the statutory grant of language so indicating, such as "not to exceed," "not exceeding," "not more than," or "shall not exceed." [5] Likewise, where the General Assembly has granted authority for payment of salary or compensation "up to, but not beyond" a stated maximum, it has manifested that intention by inclusion in the statutory grant of language similar to that in the foregoing category of monetary penalties and awards, such as "not to exceed," "shall not exceed," "not exceeding," "not more than," "not less than . . . and not more than," "not less than . . . nor more than," or "in no case less than . . . nor more than." [6] It is also noteworthy and perhaps of some significance that there are other Missouri statutes providing that an aggrieved party "*may* recover" double damages [e. g., §§ 271.280 and 389.690(2)] or treble damages [e. g., § 389.400] but that no reported case brought on a cause of action conferred by one of those statutes reflects even a suggestion by counsel of any such statutory modification as instant defendant's "up to, but not beyond" theory would work.

■ Where, as here, a statute is clear, plain and unambiguous on its face, provisions or limitations not plainly written or necessarily implied from what is written

may not be interpolated or intercalated therein to effect some modification of or change in the right conferred by the statute. See Missouri Public Service Co. v. Platte-Clay Elec. Coop., 407 S.W.2d 883, 891(13) (Mo.1966); St. Louis County Library Dist. v. Hopkins, 375 S.W.2d 71, 75(5) (Mo.1964). In fine, we must be guided by what the General Assembly says, not by what either we or interested parties might surmise it perchance meant to say. United Air Lines, Inc. v. State Tax Commission, 377 S.W.2d 444, 448(2) (Mo. banc 1964); Missouri Public Service Co. v. Platte-Clay Elec. Coop., supra, 407 S.W.2d at 891(14); Consolidated Freightways Corp. of Delaware v. State, 503 S.W.2d 1, 4 (Mo.1972), cert. denied 412 U.S. 919, 93 S.Ct. 2732, 37 L.Ed.2d 145 (1973); DePoortere v. Commercial Credit Corp., 500 S.W.2d 724, 727(2) (Mo.App.1973). Being definitely of the opinion that subpoints (b) and (c) are without merit, we so hold.

■ Before passing to the second point, we note that, in their *argument* of subpoint (c) under the first point, defendant's counsel essay a theretofore unannounced and unrecorded attack upon the form of the verdict returned by the jury, on the ground that it did not comply with the requirement of Rule 71.06, that "[w]hen exemplary or punitive damages are allowed by the jury, the amount thereof shall be separately stated in the verdict," closing that attack with the thrust "that unless plaintiff remits the sum of $11,679.24 (the sum assessed in excess of actual damages

---

5. "[*N*]*ot to exceed*"—§§ 89.450, 119.620, 137.545, 165.111(2), 166.141, 168.081, 168.151, 205.966(3), 214.410, 257.280(3), 279.010(3), 279.020(3), 305.090, 307.155, 374.280(1), 375.420, 375.445(2), 375.946, 379.410(2), 379.510, 389.660(3), 407.080, 473.257, 537.045, 559.370, 560.420, 561.415, and 564.590; "*not exceeding*"—§§ 41.760, 85.150, 445.070(1), 542.250, 559.340, 563.310, 563.830, 564.210, 564.320, 564.530 and 564.540; "*not more than*"—§§ 111.811, 303.370(2), 563.350, 563.360 and 564.530; "*shall not exceed*"—§§ 8.178, 66.080(1) and 556.110.

6. "[*N*]*ot to exceed*"—§§ 21.150(3), 42.010, 51.460, 56.160, 56.540(3)(4), 56.590, 61.190 (2), 85.010, 88.170(2), 113.690(2), (3), 118.120, 119.090, 287.180, 287.190, 291.040, 332.041(3), 333.221(2) and 498.100(1); "*shall not exceed*"—§§ 21.150(1), (3), 82.390 (3), 88.170(1), 98.320(4), 256.020, 287.240 (2), 333.221(1) and 339.120; "*not exceeding*" —§§ 287.240(1) and 291.040; "*not more than*" —§ 119.180(1); "*not less than . . . and not more than*"—§§ 51.430, 52.340, 53.070, 58.150, 59.270(1) and 85.090(1–19); "*not less than . . . nor more than*"—§§ 51.430, 52.340, 53.070, 56.540(3), (4), 58.150, 59.270(1) and 84.510(2); "*in no case less than . . . nor more than*"—§ 287.240(2).

and erroneously labeled by instruction number 7 'punitive damages') then this cause should be remanded for a new trial." Our authority to review claims of error is limited appropriately (1) by Rule 79.03 which (with certain exceptions not here applicable) requires that "[a]llegations of error, in order to be preserved for appellate review, must be presented to the trial court in a motion for a new trial," (2) by Rule 84.13(a) which declares that "no allegations of error shall be considered in any civil appeal from a jury tried case except such as have been presented to or expressly decided by the trial court," and (3) by Rule 84.04 directing that appellant's brief shall contain "[t]he points relied upon" [par. (a)] which "shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous . . ." [par. (d)]. Numerous reported cases recognizing and applying those rules afford further support for our present holding that we properly may not, and therefore do not, adjudicate defendant's present complaint anent the form of verdict. This for two reasons (either of which would dictate that conclusion), to wit, (1) because no such complaint was presented to the circuit court in defendant's motion for new trial,[7] and (2) because this complaint was advanced for the first time in the *argument* section of defendant's brief here.[8]

▮ However, we may and perhaps should record the fact that the form of verdict returned in this case was in substantial, although not precise, compliance with Rule 71.06 in that the jury therein specifically assessed plaintiff's actual damages in the sum of $5,839.62 and, by thereafter assessing "plaintiff's actual and punitive damages in an amount three times his actual damages in the sum of $17,518.86" indirectly, but nevertheless plainly, did assess his punitive damages at $11,679.24. The language of the form of verdict returned by the jury (one of three such forms given to the jury in instruction 10, which otherwise faithfully conformed to MAI 36.11), no doubt was prompted by an effort to follow the permissive statutory grant in § 416.455 for recovery of "three times the actual damages sustained." However that may be, we are satisfied that, on the record before us, defendant was in no wise prejudiced or adversely affected by the form of verdict.

▮ In his second point, defendant complains that the trial court erred in giving instruction 2, reading as follows:

"Your verdict must be for plaintiff if you believe:

"First, defendant advertised or sold milk for less than cost, and

"Second, defendant did sell with the intent or with the effect of injuring plaintiff; and

"Third, as a direct result thereof, plaintiff suffered damage,

unless you believe plaintiff is not entitled to recover by reason of Instruction No. 5."[9]

Counsel assert that the giving of this not-in-MAI instruction constituted reversi-

---

7. Dudeck v. Ellis, 399 S.W.2d 80, 97(18) (Mo.1966) ; State ex rel. State Highway Commission v. Heim, 483 S.W.2d 410, 415(16) (Mo.App.1972) ; Missouri State Park Board v. McDaniel, 473 S.W.2d 774, 781(4) (Mo.App.1971), 51 A.L.R.3d 1040; Aiple v. South Side National Bank in St. Louis, 442 S.W.2d 145, 148(3) (Mo.App.1969).

8. Berger v. Huser, 498 S.W.2d 536, 539(2) (Mo.1973) ; State ex rel. Danforth v. Independence Dodge, Inc., 494 S.W.2d 362, 367(5) (Mo.App.1973) ; Keith v. Tucker, 483 S.W.2d 430, 436(10) (Mo.App.1972) ; Del Monte Corporation v. Stark & Son Wholesale, Inc., 474 S.W.2d 854, 857(2, 3) (Mo.App.1971), and cases there collected.

9. *Instruction 5.* "Your verdict must be for the defendant, even if you believe defendant advertised or sold milk for less than his cost, if you believe:
"The prices defendant charged for milk were made in good faith to meet the equally lower price of competition and were not made with the intent or with the effect of unfairly diverting trade from ·plaintiff."

ble error because "said instruction is confusing, misleading, conflicting, and a positive misdirection to the jury, since it authorizes a verdict for plaintiff even if the jury finds that plaintiff was not injured by actions of the defendant." As best we can distill it, the essence of defendant's fine-drawn, sophistic presentation of this point is that, since paragraph "Second" required a finding in the disjunctive that "defendant did sell with the intent *or* with the effect of injuring plaintiff" (emphasis by counsel), the jury might have found that defendant indeed did intend to injure plaintiff but failed so to do because plaintiff's total income reported on his income tax return for the calendar year of 1961 was $6,071.33 and his total income reported on his return for the calendar year of 1962 was $12,173.21;[10] but that, when the jury reached paragraph "Third" requiring a finding of damage, "the jury found itself in a quandary" and "had to speculate as to how a plaintiff can be damaged without being injured—[t]he court told them in paragraph Second that this was possible." Then indulging the temptation to speculate themselves, counsel suggest that the jury might have decided that attorneys' fees should be considered or that plaintiff's appearance in court "justified damage because of loss of time and the strain of the trial—[t]he possibilities seem endless."

Careful consideration of this point leaves us in no doubt but that counsel have undertaken to raise a frail superstructure of speculation upon the quicksand of a false premise, to wit, that "[t]he court told [the jury] in paragraph Second" of instruction 2 that "a plaintiff can be damaged without being injured." We can neither read into nor infer from the language of paragraph Second any such meaning, idea, concept or conclusion. Considered from either a commonsense or a structural grammatic standpoint, the closing adverbial prepositional phrase "of injuring plaintiff" in paragraph Second modified and referred to both of the preceding adverbial prepositional phrases, i. e., "with the intent" and "with the effect," so that the true and manifest meaning of paragraph Second was as if it had been expanded thusly, "Second, defendant did sell with the intent [of injuring plaintiff] or with the effect of injuring plaintiff." M. Semmelmeyer & D. Bolander, Instant English Handbook 191 (1968) ; J. Walsh & A. Walsh, Plain English Handbook § 338, p. 52 (Rev.Ed.1959). And irrespective of whether the jury might have found "intent" or "effect" or both under paragraph Second, it is clear that instruction 2 authorized and permitted no verdict for plaintiff unless the jury further found pursuant to the requirement of paragraph Third that, "as a direct result thereof, plaintiff suffered damage." In defining and treating of "damage" and "injure," lexicographers cite each as a synonym of the other [Webster's Third New International Dictionary, "damage," p. 571, "injure," p. 1164 (1967) ; The American Heritage Dictionary of the English Language, "damage," p. 333, "injure," p. 676 (1969)], and we are of the view that ordinarily intelligent laymen regard and use "damage" and "injure" in like manner.

■ Furthermore, that portion of paragraph Second, i. e., "with the intent or with the effect of injuring plaintiff," upon which defendant's attack against instruction 2 depends, faithfully follows the lan-

---

10. Plaintiff explained that he was engaged not only in the distribution of milk but also in hauling milk "from the farm into the procesisng plant," which was "a separate source of income"; that the volume of milk thus hauled by him increased from six million pounds in 1960 to more than nine million pounds in 1961 and then to more than twelve million pounds in 1962; but that the expenses incident to picking up more milk on his established routes did not increase in direct ratio to the volume. No evidence was adduced concerning the volume of milk picked up during the period for which damages were sought herein, i. e., October 1961 to August 1962 inclusive, or concerning plaintiff's income during that period.

guage of § 416.415(1) of the Act which declares that "[n]o processor or distributor shall, *with the intent or with the effect . . . of* otherwise *injuring a competitor . . .* " sell milk for less than cost as determined pursuant to the Act. In cases predicated upon a statutory violation, as is the case at bar, it is generally sufficient to couch a verdict-directing instruction substantially in the language of the statute. Rooney v. Lloyd Metal Products Co., 458 S.W.2d 561, 570(10) (Mo.1970); May v. Bradford, 369 S.W.2d 225, 228(7) (Mo. 1963).

In considering defendant's complaint about instruction 2, we also have noted the directive that "where [as here] there is no applicable MAI so that an instruction not in MAI must be given, then . . . such [instruction] shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.-01(e). And we have been mindful of the principles well stated and summarized in Wims v. Bi-State Development Agency, 484 S.W.2d 323, 325(3) (Mo. banc 1972): " '[I]n determining the legal sufficiency of instructions [when not using an MAI form] . . . the court "should not be hypertechnical in requiring grammatical perfection, the use of certain words or phrases, or any particular arrangement or form of language, but . . . should be concerned with the meaning of the instruction . . . to a jury of ordinarily intelligent laymen." ' Bartleman v. Humphrey, Mo.Sup., 441 S.W.2d 335, 348. And it has often been recognized that juries are composed of ordinarily intelligent persons who should be credited with having common sense and an average understanding of our language." See also Tietjens v. General Motors Corporation, 418 S.W.2d 75, 86(9, 10) (Mo.1967); Samuels v. Klimowicz, 380 S.W.2d 418, 421(3) (Mo. 1964); LaPlant v. E. I. DuPont de Nemours and Co., 346 S.W.2d 231, 242–243(18) (Mo.App.1961); Gould v. M.F.A. Mutual Ins. Co., 331 S.W.2d 663, 671(15) (Mo. App.1960).

We are of the definite opinion that, examined with due regard for all of the foregoing, instruction 2 was not erroneous. In any event, when all of the instructions in the case are read and considered together as they must be [Jefferson v. Biggar, 416 S.W.2d 933, 939(5) (Mo.1967); Hampton v. Cantrell, 464 S.W.2d 744, 749 (Mo.App.1971); Ervin v. Coleman, 454 S.W.2d 289, 292(7) (Mo.App.1970)] and thereby not-in-MAI instruction 5 (offered by defendant and quoted marginally in note 9) is noted, and when we recall that $5,839.62, the amount of "actual damages" found by the jury in its verdict was the precise sum shown in evidence as having been paid by defendant to his subdistributors, we are convinced beyond doubt that defendant's attack upon instruction 2 is without merit and that the giving of that instruction could not have constituted prejudicial error "materially affecting the merits of the action" [Rule 84.13(b)], which would be prerequisite to setting aside the judgment nisi.

Accordingly, the judgment for plaintiff is affirmed.

HOGAN, C. J., and TITUS and BILLINGS, JJ., concur.

FLANIGAN, J., not participating because not a member of the court when this cause was submitted.