Herbert H. FORD, Jr. and Diana Ford, Appellants,

v.

Stephen M. GORDON, Respondent.

No. WD 54607.

Missouri Court of Appeals, Western District.

Submitted Oct. 14, 1998.

Decided Feb. 23, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1999.

Application to Transfer Denied June 1, 1999.

Andrew Heyl, Lenexa, KS, for appellants.

Gail Lammers, Overland Park, KS, for respondent.

Before ULRICH, P.J.; SMART and RIEDERER, JJ.

JAMES M. SMART, Jr., Judge.

Plaintiffs Herbert and Diana Ford appeal the defendant's jury verdict in a personal injury case. The Fords raise two points on appeal. They first contend that trial court erred in allowing the introduction of evidence of their $70,000.00 settlement of a different personal injury law suit. Because we conclude that the trial court abused its discretion in admitting evidence of the amount of the settlement, and because we conclude that the evidence had a prejudicial effect, we reverse the judgment.

## Factual Background

On September 17, 1991, Herbert Ford, a self-employed building contractor, was stopped at a red light at the intersection of 99th Street and Holmes Road. Dr. Gordon pulled up behind Mr. Ford at the intersection. Dr. Gordon thought that traffic had begun moving and took his foot off the brake. His vehicle collided with the back of Mr. Ford's van. Dr. Gordon and Mr. Ford discussed the matter at the scene. Mr. Ford stated that he did not think he had been injured, and Dr. Gordon observed nothing unusual about Mr. Ford's physical condition. Both parties drove their vehicles away from the accident site. Dr. Gordon's vehicle was not damaged; however, the damage to Mr. Ford's van amounted to $2,400.00.

Mr. Ford testified that shortly after the accident, he began experiencing lower back pain. He consulted Dr. Donelson, his chiropractor, on October 9, 1991. Dr. Donelson treated him until April, 1992, at which time Mr. Ford contacted Dr. Norton, his family physician, for evaluation and treatment. Dr. Norton sent Mr. Ford to several sessions of physical therapy. In October, 1992, Dr. Norton referred Mr. Ford to Dr. Lipsey, an orthopedic surgeon. The appointment was scheduled for October 28, 1992.

On October 26, 1992, before he was scheduled to see Dr. Lipsey, Mr. Ford was involved in a second automobile collision, this one caused by the negligence of Mr. William Bishop. Mr. Ford's vehicle was struck from the side by Mr. Bishop's vehicle. The injuries Mr. Ford allegedly suffered as a result of this second collision included a shoulder injury, a dislocated collarbone, severe neck pain, severe head-

aches and a migrainous condition in one of his eyes. Following the second collision, Mr. Ford underwent a surgical procedure (a laminectomy) to relieve pressure on his lumbar spinal cord. Mr. And Mrs. Ford later filed separate actions against Dr. Gordon and Mr. Bishop. During the pendency of his case against Dr. Gordon, Mr. Ford settled his claim against Mr. Bishop.

Count I of the Fords' claim against Dr. Gordon sought Mr. Ford's medical expenses and compensation for pain and suffering related to the accident. Count II of the claim sought damages for loss of consortium and damages for the mental anguish Mrs. Ford suffered as the result of her husband's accident with Dr. Gordon. The case was tried to a jury, and the jury found for Dr. Gordon on both counts. The Fords appeal.

### Admission of $70,000.00 Settlement

■ The Fords contend that the trial court erred in allowing the admission into evidence of the $70,000.00 settlement in the Bishop law suit because it improperly put a collateral source before the jury and was irrelevant.

■ In 1960, the collateral source rule was established in Missouri. *Kickham v. Carter,* 335 S.W.2d 83 (Mo.1960). The collateral source rule is not one single rule, but a combination of different rationales applied to a number of situations to determine whether mitigation of damages should be precluded from admission into evidence. *Washington by Washington v. Barnes Hosp.,* 897 S.W.2d 611, 619 (Mo. banc 1995). The theory behind the collateral source rule is that a wrongdoer should not enjoy the benefit of reduced liability by showing that the plaintiff has already been compensated for the loss from a collateral source, independent of the wrongdoer. *Kelley v. Kelly Residential Group, Inc.,* 945 S.W.2d 544, 552 (Mo.App.1997).

■ Generally, the collateral source rule applies only to evidence of collateral compensation regarding the *same* injury.

*See, e.g., Perkins v. Runyan Heating & Cooling Servs., Inc.,* 933 S.W.2d 837, 840 (Mo.App.1996) (collateral source rule did not apply to receipt of worker's compensation benefits in connection with injury unrelated to injury in question). Dr. Gordon introduced evidence of the Fords' settlement of a claim related to a separate, subsequent action. We need not decide whether the collateral source rule has any application to a settlement of a claim of a separate injury where some of the alleged damages may overlap because general principles of relevance and admissibility will, we believe, dictate an identical result.

■ Evidence is considered relevant if it tends to prove or disprove a fact at issue. *Anuhco, Inc. v. Westinghouse Credit Corp.,* 883 S.W.2d 910, 932 (Mo. App.1994). We give "substantial deference" to a trial court's decision regarding the admissibility of evidence. *Oldaker v. Peters,* 817 S.W.2d 245, 250 (Mo. banc 1991). Such a decision will not be disturbed absent an abuse of discretion. *Id.; see also Graves v. Atchison–Holt Elec. Co-op.,* 886 S.W.2d 1, 3 (Mo.App.1994).

The Fords argue that the trial court erred in admitting evidence of their $70,-000.00 settlement in a subsequent personal injury case. An issue before the jury in the present case was whether Dr. Gordon caused the injuries of which Mr. Ford was complaining. The defense contended that Mr. Ford's bodily injuries were either pre-existing or were caused by the collision with Mr. Bishop. Dr. Gordon was, of course, entitled to show that Mr. Ford was in another collision after his collision with Dr. Gordon. Dr. Gordon was also entitled to show that Mr. Ford's collision with Mr. Bishop resulted in additional physical injury to Mr. Ford, and the extent of that injury. The question is whether Dr. Gordon was entitled to show that the Fords' claims against Mr. Bishop had been settled for $70,000.00.

Plaintiff's proof of the degree of his injury in the Gordon collision was compli-

cated to some extent by the fact he did not see an orthopedic surgeon until after the second collision had occurred. It was also complicated by the fact that Mr. Ford, who was in his early 60's at the time of the collision, had degenerative arthritis which existed before either accident, causing some spinal stenosis and discomfort. He also had disc degeneration between the fourth and fifth lumbar vertebrae. The physicians who testified could not determine with confidence the etiology of this damage. Although the defense conceded that Dr. Gordon was at fault as to whatever injury was sustained, it argued that the amount of injury sustained in the Gordon collision was negligible, and attempted to show that Mr. Ford's pre-existing degenerative disease, together with the trauma of the Bishop collision, caused his damages.

At trial, during the cross-examination of Mr. Ford, the defense asked Mr. Ford how much he had recovered from his settlement with Mr. Bishop. The plaintiff objected, contending the information sought was prejudicial, and would tend to shed "more heat than light on the matter." In the side-bar colloquy with the court, Mr. Ford's counsel stated in response to a question that, after the payment of expenses, the Fords had divided $27,000.00 with their attorney from the $70,000.00 settlement.[1] The defense maintained that it wanted to show the amount of the settlement to show the "magnitude" of the injuries attributable to the collision with Mr. Bishop. The court permitted the inquiry as to the amount of the settlement.

The defense now, on this appeal, abandons the argument that the evidence of the amount of the settlement was relevant to show the magnitude of the injuries received in the Bishop collision. Therefore, we need not address that possible justification.

To justify the admission of this information, the defense cites an exception to the collateral source rule that arises when the plaintiff brings the issue of his or her financial condition into the case. *See Moore v. Missouri Pac. R.R. Co.*, 825 S.W.2d 839, 842–43 (Mo. Banc 1992). Dr. Gordon argues that the amount of the settlement was admissible because the Fords asserted at trial that Mr. Ford's collision with Dr. Gordon forced Mrs. Ford to return to work to make financial ends meet. Thus, argues Dr. Gordon, the amount of the settlement was admissible to shed light on the financial circumstances of the Fords because the Fords claimed that their financial circumstances, which resulted from the collision, forced them into a significant change of family lifestyle.

■ We agree that a defendant is entitled to present evidence of substantial financial resources which would contradict the claim that financial hardship caused additional damages. *Id.* at 842–43. Thus, we agree that in this context there could be some degree of relevance of the *net* recovery of plaintiffs on their claim against Mr. Bishop *if* they had made a substantial net recovery. In other words, the trial judge could have reasonably concluded that a substantial net recovery would have made it less likely to be true that Mrs. Ford would have been forced to return to the work force in order to make ends meet. However, here there was no evidence of a substantial net recovery. Logic does not support the relevance of the *total* settlement because the typical net from a settlement, after deducting attorneys' fees, litigation expenses, and medical expenses, would generally be substantially less than the settlement. In general, the amount of a total settlement is unreliable as an indicator of the amount of financial benefit provided to a claimant. In some cases, it may indeed be very misleading. Also, there is no dispute that Mr. Ford was

1. Counsel referred to a "big carrier" receiving a substantial part of the settlement. We suppose that perhaps a worker's compensation insurer was subrogated to the claim against Mr. Bishop.

unable to work for a period of time. Settlement or not, Mrs. Ford very likely would have felt some pressure to gain employment outside the home. We consider these factors in evaluating the probative value of the amount of the settlement. This probative value must be balanced against the fact that there may be some degree of prejudicial effect arising from the disclosure of a settlement in the amount of $70,000.00, in that the jury might tend to view the Fords as already well compensated, or perhaps overly well compensated, for the injuries in both collisions. Moreover, this misleading information might have played into the notion that the Fords were greedy and attempting to abuse the system by bringing this claim.

The trial judge was required to consider both the degree of probative value and the degree of potential prejudicial effect. Even relevant evidence should be excluded when the prejudicial effect of the evidence exceeds the probative value. *Stevinson v. Deffenbaugh Ind., Inc.*, 870 S.W.2d 851, 860 (Mo.App.1993). We will grant relief when an erroneous admission either prejudices the complaining party or adversely affects the jury in reaching its verdict. *Graves*, 886 S.W.2d at 3. Evidence is considered prejudicial if it "tends to lead the jury to decide the case on some basis other than the established propositions in the case." *Id.*

Here, we believe that there was no actual probative value in the total amount of the settlement. Moreover, the information elicited was more likely to mislead than to supply pertinent information. We conclude that the decision to admit the evidence of the amount of the settlement was, in light of the substantial risk of prejudice to the plaintiffs, an abuse of discretion. We also conclude that the potentially misleading effect of the settlement information resulted in actual prejudice. We consider the fact that Dr. Gordon's fault was conceded, and the only issue was that of the amount of bodily injury. There was

evidence of at least some minor bodily injury,[2] and even the defendant's expert recognized the appropriateness of Mr. Ford's chiropractic and physical therapy expenses following the Gordon collision. We conclude that the jury's finding of no damages in the light of these facts speaks eloquently of prejudice. The judgment is reversed and the case is remanded for a new trial.

ULRICH and RIEDERER, JJ., concur.

---

2. The property damage to the vehicle was not part of this claim.