**MOORE AUTOMOTIVE GROUP, INC., Respondent,**

v.

**Julie D. LEWIS, Appellant,**

**and**

**Kevin M. Lewis, Defendant.**

**No. ED 95870.**

Missouri Court of Appeals, Eastern District, Division Four.

March 20, 2012.

---

464

Sanford Goffstein, St. Louis, MO, for appellant.

David G. Wasinger, St. Louis, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Julie Lewis (Defendant) appeals the trial court's grant of summary judgment to Moore Automotive Group, LLC (Plaintiff) in the amount of $2,401,432.35 on its claims for conversion and breach of fiduciary duty. Defendant contends the trial court improperly relied on the collateral source doctrine to preclude Defendant from introducing evidence of payments that Plaintiff received from other sources and that summary judgment was inappropriate because

there was a genuine issue of fact as to the amount of Plaintiff's damages. We reverse and remand.

### Factual and Procedural Background

Plaintiff, an automobile dealer, employed Defendant as its chief financial officer from September 1997 until October 3, 2005. From September 1997 through August 2005, Defendant electronically transferred Plaintiff's funds and used Plaintiff's company checks to pay her personal expenses. On September 15, 2006, Defendant pleaded guilty in U.S. District Court to fraudulently transferring from Plaintiff's bank accounts funds in excess of $2,401,432.95.

On November 1, 2005, Plaintiff filed a petition against Defendant and her husband alleging, *inter alia*, conversion and breach of fiduciary duty.[1] On July 6, 2007, Plaintiff filed a motion for summary judgment claiming that no genuine issue of material fact existed and Plaintiff was entitled to $2,401,432.95 as a matter of law. Specifically, Plaintiff alleged that: Defendant worked for Plaintiff in the position of chief financial officer; Defendant "fraudulently and without authorization transferred [Plaintiff's] funds to pay her personal expenses"; "[t]he amount diverted from [Plaintiff's] bank accounts to American Express and other creditors of [Defendant] was in excess of $2,401,432.95"; and Defendant had not repaid any of the money owed.

In response, Defendant admitted that she had fraudulently transferred Plaintiff's funds to pay her personal expenses and that the amount she stole from Plaintiff exceeded $2,401,432.95, but she argued that a genuine issue of material fact existed as to the amount of damages that Plaintiff was entitled to recover from her. Specifically, Defendant claimed that the trial court should reduce the judgment against her by amounts that Plaintiff received from other sources as compensation for the money that Defendant converted from Plaintiff. In her statement of additional material facts, Defendant alleged that Larson Allen Weishair & Co. (Larson Allen), Plaintiff's accounting firm from 1999 until 2006, failed to discover Defendant's illegal activities and, on August 29, 2006, Larson Allen and Plaintiff entered a settlement agreement and mutual release in which Larson Allen agreed to pay Plaintiff $1.5 million. Defendant also alleged that she was entitled to offsets based upon: the $500,000 in professional fees that Larson Allen forgave Plaintiff; the $115,139.77 that American Express credited Plaintiff's account;[2] and the amounts that Plaintiff could "anticipate" receiving as a result of the U.S. government's garnishment and sale of her assets.[3]

Defendant argued that there was "an issue of fact which must be resolved at trial with respect to whether Larson Allen's settlement payment was made because of Larson Allen's failure to discover [Defendant's] misappropriation of funds or merely because of Larson Allen's poor accounting work." Defendant maintained

---

1. Plaintiff voluntarily dismissed its action against Defendant's husband.

2. In its reply memorandum in support of its motion for summary judgment, Plaintiff conceded that Defendant was entitled to an offset for the $115,139.77 paid by American Express.

3. Because we reverse summary judgment on the grounds that there was a genuine dispute as to Defendant's right to offset her judgment by the amount of Larson Allen's settlement payment, we need not address Defendant's arguments regarding her right to offsets for the $500,000 in fees forgiven by Larson Allen and the assets garnished by the U.S. government.

that if the Larson Allen settlement payment "was intended to compensate [Plaintiff] for the same loss caused by [Defendant's] wrongful acts, then [Defendant] is entitled to introduce evidence of that payment to mitigate [Plaintiff's] damages against her." In support of her position that Larson Allen's payments to Plaintiff represented compensation for the money that Defendant fraudulently transferred from Plaintiff, Defendant submitted the deposition testimony of the following individuals: Tom O'Connell, Larson Allen's accountant responsible for auditing Plaintiff's dealerships; Charles McElroy, Larson Allen's managing partner; Ron Moore, Plaintiff's owner and president; and Pam Eppers, a former employee of Plaintiff.

In his deposition, Mr. O'Connell stated that he was forced to resign his position at Larson Allen after Plaintiff and Larson Allen discovered Defendant's illegal activities. Mr. O'Connell testified that the "only reason" he resigned from Larson Allen was "because of the losses that [Plaintiff] incurred as a result of Julie Lewis' theft and [Mr. O'Connell's] failure [or] mistake of failing to supervise an employee in '04." Defendant also presented the deposition testimony of Mr. McElroy, who initially denied paying the $1.5 million settlement to Plaintiff "because of the embezzlement of Julie Lewis." However, he later acknowledged that "the primary" purpose of the settlement pay was to "avoid a future potential claim against our firm" because of the embezzlement committed by Defendant.

Defendant also submitted the deposition testimony of Mr. Moore and Plaintiff's employee, Ms. Eppers. When asked whether Plaintiff "recovered any funds from anybody as a result of any of the activities of Julie Lewis," Mr. Moore acknowledged receiving "a mediation and settlement for recovery of fees and for decisions made based on prior statements from Larson Allen." Mr. Moore elaborated that, Plaintiff "didn't get a good product out of [Larson Allen] for a few years" because Larson Allen failed to discover Defendant's fraudulent transfer of Plaintiff's funds. Plaintiff's employee, Pam Eppers, testified that she and Mr. Moore discussed the possibility of suing Larson Allen for its "failure to discover Julie Lewis' illegal activities." Ms. Eppers stated that, when Mr. Moore later informed her that Plaintiff was going to sue Larson Allen, "that [it] was a given" that the action was based on Larson Allen's failure to discover the embezzlement by Defendant.

▪ Plaintiff filed a reply memorandum, arguing that Plaintiff's claims against Larson Allen and Larson Allen's subsequent payment to Plaintiff were "unrelated and irrelevant to the claims pending against" Defendant. Plaintiff further argued that "the payments [from Larson Allen and its insurer] are collateral sources that are both inadmissible and unable to be setoff[4] from any Judgment obtained in the instant suit."

After reviewing the pleading and the arguments, the trial court found there

---

4. A setoff, however, is essentially a counterclaim that "has the nature and effect of an independent action by the defendant against the plaintiff." *Buchweiser v. Estate of Laberer*, 695 S.W.2d 125, 129 (Mo. banc 1985) ("Setoff is generally founded on a liquidated debt and used to discharge or reduce plaintiff's claim by an opposite claim arising from a transaction extrinsic to the plaintiff's cause of action."). Here, Defendant does not allege

a claim against Plaintiff, but rather contends that she is entitled to reduce the judgment against her to the extent that other sources have compensated Plaintiff for the injuries she caused it. Therefore, "offset" is the appropriate term. *See Gibson v. City of St. Louis*, 349 S.W.3d 460, 463 n. 2 (Mo.App. E.D.2011); *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.*, 849 S.W.2d 177, 179 n. 2 (Mo.App.E.D.1993).

were no material issues of disputed fact relevant to Plaintiff's claim against Defendant and entered judgment for Plaintiff in the amount of $2,401,432.35.[5] In regard to Defendant's claim for a reduction in damages, the trial court held: "Defendant's claims for reduction of the amount of damages are for set offs [sic] from collateral sources to which Defendant is not entitled to credit as a matter of law." Defendant appeals.

### Standard of Review

Appellate review of summary judgment is *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). When reviewing a trial court's grant of summary judgment, this court views the record in the light most favorable to the party against whom summary judgment was entered. *Id.* This court will uphold summary judgment only if we find that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.;* Rule 74.04(c). When the defending party raises an affirmative defense, "a claimant's right to judgment depends just as much on the *non-viability* of that affirmative defense as it does on the *viability* of the claimant's claim." *ITT,* 854 S.W.2d at 381 (emphasis in the original).

### Discussion

 Defendant claims that the trial court erred in granting summary judgment in favor of Plaintiff in the amount of $2,401.432.35 because there were genuine issues of material fact concerning the amount of damages that Plaintiff was entitled to recover from Defendant.[6] Specifically, Defendant claims that she is entitled to reduce or offset the judgment against her by the amount of money Plaintiff has received from other sources as compensation for its losses caused by Defendant. In response, Plaintiff asserts that the trial court properly granted its motion for summary judgment because evidence of payments that Plaintiff received from sources other than Defendant was inadmissible under the collateral source rule and, therefore, could not be used to offset Plaintiff's damages.[7]

---

5. Although Defendant pleaded guilty to converting $2,401,432.95 and Plaintiff sought damages in that amount, the trial court entered summary judgment in the amount of $2,401,432.35. We use the number that appears in the trial court's judgment.

6. We note that reduction or offset of damages is an affirmative defense that must be pleaded and proved. *CADCO, Inc. v. Fleetwood Enters., Inc.,* 220 S.W.3d 426, 441 (Mo.App. E.D. 2007) ("Generally, a defendant must include 'offset' in its pleadings as an affirmative defense prior to the start of trial."); *see also Norman v. Wright,* 153 S.W.3d 305, 306 (Mo. banc 2005) (relating to the statutory right to reduction created by Section 537.060). Rule 55.08 requires that all applicable affirmative defenses be pleaded in the responsive pleadings or else they will be considered generally waived. Rule 55.08; *Chouteau Auto Mart, Inc. v. First Bank of Mo.,* 148 S.W.3d 17, 25–26 (Mo.App. W.D.2004). "A party's attempt to raise an affirmative defense for the first time in a response to a motion for summary judgment, without seeking leave to amend the pleadings, is not sufficient to plead the defense." *Glasgow Enters., Inc. v. Bowers,* 196 S.W.3d 625, 630 (Mo.App. E.D.2006). However, Plaintiff did not object in the summary judgment proceedings to Defendant's failure to properly plead her affirmative defense. "When issues not raised by the pleadings are tried by express or implied consent by the parties, they shall be treated in all respects as if they had been raised in the pleadings." Rule 55.33(b); *see also Norman v. Wright,* 100 S.W.3d 783, 786 (Mo. banc 2003).

7. Plaintiff also argues that Defendant is barred by her judicial admissions and the doctrine of estoppel from contesting the amount of damages she owes because Defendant pleaded guilty to fraudulently transferring from Plaintiff more than $2,401,432.35.

■ Under Missouri law, a plaintiff is entitled to only one satisfaction of the same wrong. *Echols v. City of Riverside,* 332 S.W.3d 207, 212 (Mo.App. W.D.2010); *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.,* 849 S.W.2d 177, 180 (Mo.App. E.D.1993). Thus, "a plaintiff may pursue separate judgments against defendants that are jointly and severally liable for the full amount of plaintiff's damages, but, under the 'one satisfaction' rule, may recover only one satisfaction for the losses." 47 Am.Jur.2d Judgments § 809 (2006). "The general rule is that a party may not recover from all sources an amount in excess of the damages sustained, or be put in a better condition than he would have been had the wrong not been committed." *Ozark Air Lines, Inc. v. Valley Oil Co., LLC,* 239 S.W.3d 140, 147 (Mo.App. W.D. 2007) (internal quotation omitted). "While entitled to be made whole by one compensatory damage award, a party may not receive the windfall of a double recovery, which is a species of unjust enrichment and is governed by the same principles of preventive justice." *Echols,* 332 S.W.3d at 212 (quotation omitted).

■ When a plaintiff receives a pre-trial settlement that partially compensates his claim, the trial court "will take any prior payments into consideration and will credit them on the damages assessed by the jury's verdict as required by law." MAI 1.06 Committee Comment (1983); *see also Gibson v. City of St. Louis,* 349 S.W.3d 460, 465 (Mo.App. E.D.2011). Accordingly, if a plaintiff stands to recover duplicative damages for the same wrong, a defendant may plead an affirmative defense seeking to offset any judgment against it by any amounts already received by the plaintiff as compensation for that

wrong. *See Stevenson v. Aquila Foreign Qualifications Corp.,* 326 S.W.3d 920, 929–30 (Mo.App. W.D.2010). To prove a double recovery, a defendant must demonstrate an overlap between: (1) the injuries or damages for which a plaintiff has received compensation; and (2) the injuries or damages that are the subject of a plaintiff's claim against the defendant. *Id.* at 930. Where, as here, a defendant claims an offset based on a settlement payment received by the plaintiff, how the settling parties intended the settlement to be allocated is a question of fact. *Id.*

In response to Plaintiff's motion for summary judgment, Defendant asked the court to reduce the judgment by the amount of the Larson Allen settlement payment and presented evidence that the settlement was intended to compensate Plaintiff for the money fraudulently transferred by Defendant. Specifically, Defendant presented deposition testimony of Mr. O'Connell, the Larson Allen accountant responsible for auditing Plaintiff's dealerships, who testified that he was forced to resign as a result of his failure to discover Defendant's illegal activities, and Mr. McElroy, Larson Allen's managing partner, who acknowledged that the "primary reason" for the $1.5 million settlement payment to Plaintiff was to avoid litigation arising out of Defendant's embezzlement of Plaintiff's funds. Additionally, Defendant submitted to the trial court the deposition testimony of Mr. Moore, who stated that his company received a settlement payment from Larson Allen because of Larson Allen's failure to provide "a good product," and Plaintiff's employee, Ms. Eppers testified that Plaintiff sued Larson Allen because of its failure to discover Defendant's embezzlement.

However, Defendant does not contest the amount of actual damages she caused Plaintiff. Rather, Defendant claims that she is entitled to offset the judgment against her to the extent that Plaintiff's damages have been satisfied by other parties.

Plaintiff argued on summary judgment and on appeal that Defendant is not entitled to reduce the judgment against her by the amount Plaintiff received as settlement from Larson Allen because Plaintiff's "cause (and injury) for these claims against [Larson Allen] was not the conversion of [Defendant], but rather was the failure to provide complete and accurate accounting reports to [Plaintiff] to allow for sound business decisions." Although Plaintiff argues that the "the actual injury complained of in [Plaintiff's] claim against [Larson Allen] was different from that presented in the instant lawsuit," Plaintiff failed to include evidence relating to its claims against Larson Allen in the record on appeal.

Even if Plaintiff had supported this argument with evidence in the record, summary judgment would not have been proper. When considering an appeal from summary judgment, we "will review the record in the light most favorable to the party against whom judgment was entered" and "accord the non-movant the benefit of all reasonable inferences from the record." *ITT,* 854 S.W.2d at 376. Viewed in that light, if there remains a genuine dispute of material fact or if the facts do not entitle the movant to judgment as a matter of law, we must reverse the judgment. *Dollard v. Depositors Ins. Co.,* 96 S.W.3d 885, 887 (Mo.App. W.D. 2002). Because Defendant demonstrated the existence of a genuine factual dispute as to whether Larson Allen's settlement payment to Plaintiff is attributable, in whole or in part, to the injury that Defendant caused Plaintiff, we conclude that summary judgment was improper. *See Walihan,* 849 S.W.2d at 177.

Plaintiff further contends that *Ozark Air Lines, Inc. v. Valley Oil Co., LLC,* 239 S.W.3d 140 (Mo.App. W.D.2007) "directly rejects [Defendant's] claim that the payout [Plaintiff] received from [Larson Allen] is eligible for [offset] from the total damages attributable to [Defendant]." *Ozark Air Lines* is inapposite. In that case, the plaintiff, Ozark, a regional airline, sued numerous defendants, including Valley Oil, when its airplanes failed to start as a result of contaminants in its fuel. *Id.* at 142. Prior to trial, Ozark settled its claims against all of the defendants except Valley Oil for an aggregate amount of $2.8 million. *Id.* At the trial on Ozark's claims against Valley Oil, neither party presented evidence concerning the pretrial settlements. *Id.* After the trial, a jury returned verdicts in favor of Ozark on its claims for breach of contract, product defect and negligence, and it assessed damages of $3 million. *Id.* at 142–43. Valley Oil moved the trial court to reduce the jury's award by the amount of the pre-trial settlements pursuant to Section 537.060, which provides for contribution between tortfeasors. *Id.* at 143. The trial court denied Valley Oil's motion to reduce the judgment, and Valley Oil appealed. *Id.*

On appeal, the court affirmed the trial court's holding that Valley Oil was not entitled to a reduction under Section 537.060 because the statute "is only applicable as between tortfeasors" and the jury award against Valley Oil was for tort and breach of contract claims.[8] *Id.* at 144. The *Ozark Air Lines* court further held that the $3–million–award against Valley Oil did not violate Missouri policy barring double recovery because the jury awarded Ozark damages on its tort claims, which

---

8. Also, the court held that Valley Oil was not entitled to a reduction under Section 537.060 because Valley Oil failed to prove the affirmative defense at trial. *Ozark Air Lines,* 239 S.W.3d at 145. Valley Oil's failure to take any action at trial to determine the basis of its liability under the general verdict resulted in abandonment of the affirmative defense. *Id.*

Ozark had also brought against other defendants, and on its breach of contract and product defects claims, which Ozark asserted against Valley Oil alone. *Id.* at 147. Because there was no evidence at trial relating to Ozark's pretrial settlements and no way to determine the basis of Valley Oil's liability under the jury's general verdict, "there [was] no evidence that Ozark recovered by settlement any of the damages submitted on the breach of contract claims." *Id.* at 147 (internal quotation omitted). In the absence of evidence that the pre-trial settlements compensated Ozark for the same injuries as the judgment against Valley Oil, the court held: "there is no basis other than speculation to say that the judgment allowed Ozark a double recovery." *Id.*

Plaintiff argues that, under *Ozark Air Lines,* Defendant is not entitled to an offset because the claims against her "sound in both tort (conversion) and contract (breach of fiduciary duty)." However, *Ozark Air Lines* involved a different procedural posture than the case at bar. In *Ozark Air Lines,* Valley Oil moved the trial court to reduce the judgment after the jury returned its general verdict, and the trial court was unable to determine what, if any, amount of Ozark's pretrial settlements compensated Ozark for the negligence claims that Ozark also asserted against Valley Oil. Nor could the trial court determine the amount of the jury's general verdict attributable to Ozark's negligence claims and the amount attributable to its contract claims. In contrast, Defendant asked the court to reduce the judgment in her response to Plaintiff's motion for summary judgment. In support of her request for an offset, Defendant presented evidence of Plaintiff's settlement

with Larson Allen, as well as evidence that the settlement compensated Plaintiff for the same injury as the damages that Plaintiff sought to recover from Defendant. "A payment by one person liable for a loss reduces pro tanto the amount that the injured person is entitled to receive from other persons liable for the loss." Restatement (Second) of Judgments § 50 (1982), Comment c. Because Defendant demonstrated an issue of fact as to whether Larson Allen's settlement payment was attributable to the injury Defendant caused Plaintiff, summary disposition of Plaintiff's damages was improper.

■■■ Plaintiff also contends that the trial court properly excluded evidence of payments received from sources other than Defendant pursuant to the collateral source rule. The collateral source rule is a rule of evidence that expresses the policy that a wrongdoer should not benefit from sources of payment to the victim independent of him or herself. *Smith v. Shaw,* 159 S.W.3d 830, 832 (Mo. banc 2005); *Echols,* 332 S.W.3d at 212. The collateral source rule provides that:

> [A] wrongdoer is not entitled to have the damages to which he is liable reduced by proving that plaintiff has received or will receive compensation or indemnity for the loss from a collateral source, wholly independent of him, or, stated more succinctly, the wrongdoer may not be benefited by collateral payments made to the person he has wronged.

*Washington v. Barnes Hosp.,* 897 S.W.2d 611, 619 (Mo. banc 1995) (quotation omitted). "Generally, the collateral source rule applies only to evidence of collateral compensation regarding the *same* injury." [9]

---

9. We note that Plaintiff's reliance on the collateral source rule is, in effect, a tacit admission that the collateral compensation paid by

Larson Allen is for the same injury Defendant caused. This position is contrary to Plaintiff's

*Ford v. Gordon,* 990 S.W.2d 83, 85 (Mo. App. W.D.1999) (emphasis in the original).

■■■■■ The collateral source rule is generally applied to prevent a tortfeasor from introducing at trial evidence that the plaintiff's damages will be covered, in whole or in part, by the plaintiff's insurance.[10] *See Smith,* 159 S.W.3d at 832. "The rationale for such application of the collateral source rule is that plaintiffs who contract for insurance or other benefits with funds they could have used for other purposes are entitled to the benefit of their bargain." *Porter v. Toys 'R' Us–Delaware, Inc.,* 152 S.W.3d 310, 320 (Mo. App. W.D.2004) (quotation omitted); *see also Smith,* 159 S.W.3d at 832. However, "[w]here the plaintiff has incurred no expense, obligation, or liability in securing the insurance coverage in question, the collateral source rule has no application." *Duckett v. Troester,* 996 S.W.2d 641, 648 (Mo.App. W.D.1999), *overruled on other grounds by, Spiece v. Garland,* 197 S.W.3d 594 (Mo. banc 2006); *see also Tatum v. Van Liner Ins. Co.,* 104 F.3d 223, 225 (8th Cir.1997) ("[T]he application of the collateral source rule depends on proof that the plaintiff has contributed to the fund he claims as a collateral source.").

Plaintiff maintains that the trial court properly excluded evidence of its settlement with Larson Allen because Plaintiff "incurred expense, obligation and liability when it first contracted with Larson Allen" for Larson Allen's accounting services and, when Plaintiff realized Larson Allen had provided "negligent and incompetent accounting services, [Plaintiff] contracted with Larson Allen to be reimbursed for its

damages and expenses brought about by Larson Allen's incompetence and negligence." In support of this argument, Plaintiff cites *Collier v. Roth,* 434 S.W.2d 502 (Mo.1968). In *Collier,* the plaintiff, a milk distributor, sued the defendant, a grocer, for treble damages under the Unfair Milk Practices Act (Act). *Collier,* 434 S.W.2d at 503. During the period of time in which the defendant was pricing milk in violation of the Act, the plaintiff reduced the price of milk to his subdistributors by issuing them credits, and he entered an "arrangement" with his supplier to offset the losses he incurred by issuing those credits. *Id.* at 503–04. The Supreme Court held that, under the collateral source rule, the defendant "may not escape the consequences of his violations of the Act by an application of payments received or to be received from [the plaintiff's supplier]." *Id.* at 507. Because the plaintiff in *Collier* contracted for benefits from his supplier in an effort to avoid losses, we conclude that the "contracted for" benefit in *Collier* more closely resembles a contract for insurance coverage than a settlement for liability.

Plaintiff's reliance on *Ford v. Gordon,* 990 S.W.2d 83 (Mo.App. W.D.1999) is equally unpersuasive. The court in *Ford* expressly declined to determine whether the collateral source rule applied and, instead, based its decision on rules of evidence. *Id.* at 85 ("We need not decide whether the collateral source rule has any application to a settlement of a claim of a separate injury where some of the alleged damages may overlap because general principles of relevance and admissibility will, we believe, dictate an identical result.").

central argument that the injuries caused by Plaintiff and Larson Allen are different.

**10.** Missouri courts have also applied the collateral source rule to prevent defendants from informing juries of: benefits from plaintiffs' employers; governmental benefits; and gra-

tuitous services rendered to plaintiffs. *Washington,* 897 S.W.2d at 619–20. Importantly, the Supreme Court expressly rejected "the concept that the collateral source rule should be utilized solely to punish the defendant." *Id.* at 621.

As previously noted, the collateral source rule applies only to evidence of collateral compensation for the *same injury*. *Ford*, 990 S.W.2d at 85. Whether the funds paid by Larson Allen compensated the same injury as the trial court's judgment against Defendant is a disputed question of fact. If, as Plaintiff maintains, the injury compensated by Larson Allen's settlement payment was "not the conversion of [Defendant] but rather was the failure to provide complete and accurate accounting reports to [Plaintiff] to allow for sound business decisions," then the collateral source rule is inapplicable.

Moreover, even if the trial court were to determine that the injury was "the same," Plaintiff's payment for Larson Allen's accounting services and its "contract" for reimbursement is not the type of "expense, obligation, or liability" contemplated by the collateral source rule. In other words, neither Plaintiff's original payment for Larson Allen's services nor its subsequent settlement of claims constitutes a "contribution" to the fund (the $1.5 million settlement) claimed as a collateral source. *See Burroughs v. Zurich Am. Ins. Co.*, No. 4:07CV1944MLM, 2010 WL 4781472, at *6 (E.D.Mo. Nov.10, 2010), *vacated in part by, Burroughs v. Zurich Am. Ins. Co.*, 2011 WL 572442 (E.D.Mo. Feb.15, 2011). Accordingly, the collateral source rule has no application in the instant case.

### Conclusion

The judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.

KURT S. ODENWALD, C.J., and ROBERT M. CLAYTON III, J., concur.